IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHELLE J.,[1] | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 21-cv-286-SMY |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|       **Defendant.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Michelle J. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for supplemental security income and DIB in 2019 alleging a disability onset date of October 2018. An Administrative Law Judge ("ALJ") denied the application on September 24, 2020, following an evidentiary hearing (Tr. 15-35). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following point:

1. The ALJ failed to properly evaluate residual functional capacity ("RFC").

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

**Legal Standard**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own

judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and found that she suffered from the following severe impairments since the alleged onset date of disability: affective disorders diagnosed as adjustment disorder with depressed mood, mood disorder, NOS, depression, major depressive disorder with psychosis and suicidal ideation, bipolar disorder, generalized anxiety disorder, borderline personality disorder, and methamphetamine use disorder (Tr. 18).

The ALJ found that, including Plaintiff's substance abuse, the severity of her impairments met the criteria of section 12.08 of CFR Par, Subpart P, which governs personality and impulse-control disorders (Tr. 19). The ALJ further found that even if Plaintiff stopped using methamphetamine and other substances, she would still have medically determinable mental impairments, including various affective disorders, bipolar disorder and borderline personality disorder, which would more than minimally affect her ability to perform work activities. *Id*. at 19. He also found that the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08 if the substance use was stopped (Tr. 19).

The ALJ determined that if Plaintiff stopped the substance abuse, she has had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> She can understand, remember, and carry out rote or routine instructions that require the exercise of little independent judgment or decision-making, but could not do so for complex instructions. She can maintain concentration, persistence, and pace sufficient for work with a variable pace or end-of-day production goals, but not for fast-paced work such as work at a moving conveyor belt. She can tolerate occasional work-related interaction with coworkers and supervisors. She should have no work-related interaction with the public.

(Tr. 31). The ALJ ultimately concluded that Plaintiff, absent drug abuse, retained the RFC to perform work that existed in significant numbers in the national economy, based on the testimony of a vocational expert ("VE"). *Id*.

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was 47 years old on the alleged onset date (Tr. 141). She completed four years old college (Tr. 165). Plaintiff reported past relevant work as a home health aide, sales associate, mental health technician and intake counselor (Tr. 367).

### Evidentiary Hearing

Plaintiff was represented by counsel at her hearing on August 19, 2020, and testified to the following (Tr. 82-124): Plaintiff lives with her father and minor daughter. She helps care for her father by running errands. Plaintiff no longer takes medication for diabetes since she had gastric bypass surgery and her hemoglobin A1c is better. She lost weight while using methamphetamine but has gained 30 pounds since she quit using drugs in April 2020. Plaintiff had been clean for four months. Her mental conditions have worsened since she stopped using methamphetamine. She has brain fog, lack of motivation, difficulty concentrating, and fatigue. She hallucinates about small rodents. She was obsessed with hurting her ex-boyfriend's girlfriend and ended up in a fight with her, causing her to be arrested. She is a hoarder and does not clean her house. She is an impulse shopper. She reported quitting jobs due to her difficulty getting along with others.

A vocational expert ("VE") testified during the hearing. The ALJ posed hypothetical questions to the expert that corresponded to the ultimate RFC finings. The VE testified that work could still be

performed of a commercial cleaner (DOT# 381.687-104), lab equipment cleaner (DOT# 381.687-022) and an industrial cleaner (DOT# 381.687-018).  If an individual were to be off task more than fifteen percent of the workday, all work would be precluded.  If an individual were absent three to four times per month, no work could be performed.  If an individual were unable to accept instructions and respond appropriately to criticism from supervisors up to one-third of the workday and work week, no work could be performed.

**Relevant Medical Records**

Plaintiff has an extensive history of drug abuse.  She used methamphetamine daily from January 2018 to May 2020.  When she finally entered an inpatient treatment program in May 2020, Plaintiff admitted that over the prior three years, she had spent up to $50 per day to smoke and/or snort up to a ½ gram of methamphetamine (Tr. 1067).

In December 2018, Plaintiff presented to Harrisburg Medical Center ER complaining of increased anxiety, depression, suicidal and homicidal ideation (Tr. 546).  She had suicidal ideation of killing her ex-boyfriend's new girlfriend. Plaintiff was also having suicidal thoughts to overdose on prescribed meds.  *Id*.  Plaintiff reported using 1 gram of methamphetamine per week.  *Id*.

Plaintiff was admitted to the Mulberry Center from December 21 to December 24, 2019. Naeem A. Qureshi, M.D., a psychiatrist, evaluated and diagnosed Plaintiff with Bipolar disorder Type I, anxiety, substance use disorder, and personality disorder (Tr. 480).  Plaintiff was discharged from the Center at her request on December 24, 2018.  At discharge, she reported significant improvement in her symptoms. She was calm and did not display any dangerous behavior.

In January 2019, Plaintiff attempted outpatient treatment at Egyptian Public & Mental Health (Tr. 627-642).  Plaintiff admitted smoking methamphetamine daily for the previous six months "to have energy."  Plaintiff was authorized for nine months of biweekly individual and group counseling therapy, and medication management.  On January 21, 2019, Plaintiff's primary care provider terminated care due to noncompliance with prescribed treatment and illicit drug use (Tr. 569). Rachel

Sinclair, CNP noted Plaintiff's history of methamphetamine use, manic symptoms, hypersexual behavior, and staying up for days. *Id*.

Plaintiff was admitted to the Inpatient Unit at The Pavilion Foundation on January 26, 2019, after a suicide attempt (Tr. 1039-1060). Psychiatrist Martin Repetto, M.D. evaluated Plaintiff. *Id*. Dr. Repetto noted that Plaintiff was oriented during the exam, her short and long-term memory, and attention were preserved. *Id*. Plaintiff was discharged on February 7, 2019, after being clinically stabilized. *Id*. Plaintiff denied suicidal or homicidal ideation. *Id*. Follow up appointments were scheduled over the next six weeks with the claimant's primary care provider, therapist, and psychiatrist. *Id*.

Plaintiff established psychiatric care with Linda E. Hungerford, M.D at Christopher Rural Health Plan on February 12, 2019 (Tr. 697-785). She complained of suicidal thoughts, depression, and difficulty sleeping. *Id*. Plaintiff reported that she last used street drugs on December 12, 2018. *Id*. Dr. Hungerford diagnosed her with methamphetamine use, Bipolar I disorder with a recurrent, moderate manic episode. *Id*. She also diagnosed Plaintiff with Borderline Personality Disorder. *Id*.

Plaintiff continued reporting bipolar episodes and ongoing methamphetamine use in 2019 and 2020. In April 2019, Plaintiff presented to Wabash General Hospital ER complaining of a headache resulting from a facial injury sustained during a fight with another female (Tr. 664, 727). In June 2019, Plaintiff saw Dr. Hungerford during a manic episode (Tr. 718). Dr. Hungerford noted Plaintiff was experiencing grandiose thinking, increased sense of self-esteem or self-worth, irritability or hostility to others, racing thoughts, and inability to express ideas quickly enough. *Id.* In October 2019, Plaintiff reported increased stress following an incident where she had sex with a seventeen-year-old male (Tr. 702). She reported increased anxiety, depressed mood and difficulty sleeping (Tr. 704).

In January 2020, Plaintiff received counseling at Thrive Counseling and reported worsening symptoms of sadness (Tr. 787). She reported ongoing methamphetamine use to her counseling therapist in March through May 2020. From May 5-11, 2020, Plaintiff was admitted to SSM St. Mary's

Hospital in Centralia for suicidal ideation and homicidal ideation towards the girlfriend of her ex-boyfriend (Tr. 936). Plaintiff transferred to Pavilion's Adult Partial Program after her discharge from SSM (Tr. 1063). Plaintiff was an inpatient at the Pavilion from May 11, 2020, to June 7, 2020 for treatment of methamphetamine use disorder. *Id.*

### State Agency Consultants' Opinions

On June 25, 2019, Jerry L. Boyd, Ph.D. conducted a consultative evaluation of Plaintiff's mental limitations (Tr. 645-649). He diagnosed "Bipolar I Disorder, severe, most recent episode depressed with psychosis." *Id.* He also diagnosed a history of severe methamphetamine use disorder, severe borderline personality disorder, and chronic mental health. *Id.* Dr. Boyd opined that Plaintiff had "the mental/emotional inability to meet the demands of any employment." *Id.* Plaintiff had a severely reduced stress tolerance and reduced persistence related to the unstable mood, thought disorder, psychosis, and depressive symptoms. *Id.* Although her medications help some, Plaintiff remained symptomatic. *Id.* Dr. Boyd further opined that Plaintiff would need assistance managing her own funds. *Id.* Ultimately, Dr. Boyd opined that Plaintiff could understand, carry out, and remember instructions (both complex and one-two step) and that she could understand and follow moderately complex instructions. *Id.*

In July 2019, M.W. DiFonso, Psy.D., reviewed Plaintiff's application at the request of the state agency and concluded that Plaintiff could perform multiple step productive effort with modified social demand (Tr. 150, 162). In November 2019, Howard Tin, Psy.D., affirmed these limitations upon reconsideration of Plaintiff's applications finding that Plaintiff remained capable of performing one and two-step tasks (Tr. 179-180, 196).

### Discussion

Plaintiff asserts that the ALJ improperly evaluated Dr. Boyd's opinions under SSA's new rules regarding medical opinion evidence. The ALJ's evaluation of the medical opinion evidence in Plaintiff's case was subject to new regulations pertaining to claims filed after March 27, 2017. 20

C.F.R. § 404.1520(c) (2017).  Under the regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).

ALJs evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements.  20 C.F.R. § 404.1520c(c)(1)–(5).  The ALJ must explain only how he considered the first two factors – supportability and consistency – but need not explain his consideration of the other factors.  *Id.* § 404.1520c(b)(2). Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion.  *Id.* § 404.1520c(c)(1).  While consistency assesses how a medical opinion squares with other evidence in the record.  *Id.* § 404.1520c(c)(2).

Failure to comply with these revised regulations is reversible error, subject to harmless error review.  *Stevens v. Kijakazi*, No. 21 C 270, 2022 WL 1000598, at *7 (E.D. Wis. Apr. 4, 2022).  An error is harmless if the record permits the court to "predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

In this case, the ALJ supported his RFC determination with substantial evidence and accurately characterized the medical evidence.  Although the ALJ's evaluation of Dr. Boyd's opinion did not fully comply with 20 C.F.R. § 404.1520(c), the Court finds that this failure constituted harmless error because the ALJ's rejection of Dr. Boyd's opinion was in Plaintiff's favor.  Plaintiff's arguments ignore that the ALJ found evidence of poor functioning consistent with the inability to work, but that applicable regulations directed the ALJ to also determine whether Plaintiff's drug addiction was a contributing factor material to the determination of disability.  20 C.F.R. § 404.1535(a).  Thus, the ALJ

was required to consider whether Plaintiff was still disabled if she stopped using drugs. 20 C.F.R. § 404.1535(b).

Dr. Boyd opined that Plaintiff could understand and follow moderately complex instructions. Dr. Boyd also discussed his examination findings, including that Plaintiff "was unable to consistently focus and concentrate" and "related in an inconsistent, emotionally unstable manner" during the examination. His clinical impression was that Plaintiff had "severely reduced stress tolerance and reduced persistence related to the unstable mood, thought disorder, psychosis, and depressive symptoms".

In discussing Dr. Boyd's report, the ALJ explained the difference between Dr. Boyd's examination findings and his medical opinion regarding her limitations. He noted that only one of the four paragraphs in Dr. Boyd's statement was a "medical opinion" versus psychiatric signs or symptoms reported by Plaintiff. The ALJ found Dr. Boyd's clinical impressions were persuasive of Plaintiff's functioning during a period of substance abuse rather than during an extended period of sobriety. The ALJ noted that although Plaintiff self-reported to Dr. Boyd that she had been clean and sober for 12 months, Plaintiff's statements were inconsistent with the medical records. The ALJ then explained why he did not find Dr. Boyd's medical opinion that Plaintiff could understand and follow moderately complex instructions persuasive. Specifically, the ALJ found that Plaintiff was, even during times of sobriety, limited to performing rote or routine instructions. The ALJ's rejection of Dr. Boyd's opinion was in Plaintiff's favor; Dr. Boyd believed Plaintiff capable of performing moderately complex instructions whereas the ALJ found Plaintiff was, even during times of sobriety, limited to performing rote or routine instructions.

Next, Plaintiff argues that the ALJ failed to discuss supportability or consistency with regards to the opinions of Dr. DiFonso and Dr. Tin. Again, considering Plaintiff's drug abuse, the ALJ found that the evidence supported greater functional loss than opined by Dr. DiFonso and Dr. Tin. Considering Plaintiff's functioning without substance abuse, the ALJ found the state agency

consultants' psychiatric review technique "not completely persuasive" and their residual functional capacity assessment "more persuasive than not". In evaluating the persuasive value of these findings, the ALJ noted that the residual functional capacity assessment was "supported by normal psychiatric signs and findings during periods of sobriety," which directly addressed the consistency factor under the regulations (Tr. 33). 20 C.F.R. § 404.1520c(c)(2). He further found that Plaintiff, while sober, had more restrictions than found by the consultants. The ALJ found that Plaintiff was limited to rote or routine instructions, little independent judgment or decision-making, occasional interaction with coworkers and supervisors, and no interaction with the public. The ALJ then identified numerous jobs in the national economy for which Plaintiff could perform. The Court finds that Plaintiff has not established any errors requiring remand.

## Conclusion

After careful review of the record, the Court finds that ALJ's findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED.** The Clerk of Court shall enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 30, 2023**

**STACI M. YANDLE**
**United States District Judge**